IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SHERRIE WRIGHT LEWIS, | § | |
|     Plaintiff, | § | |
| | § | No. 9:16-CV-00098 |
| v. | § | |
| | § | |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sherrie Wright Lewis, requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence and therefore affirms the decision denying benefits.

## I. Judicial Review

Review of Social Security disability cases "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)); *see generally* 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social Security). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (citation and internal quotation marks omitted). It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). In applying this standard, the

court "may not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (internal citation omitted). The court may affirm only on the grounds that the Commissioner stated for his decision. *Cole v. Barnhart,* 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

In order to qualify for disability benefits, a claimant must suffer from a disability. *See* 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *see also* 42 U.S.C. § 423(d)(1)(A). The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"]. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *see generally* § 404.1520. The claimant bears the burden of proof with respect to the first four steps of the five-step analysis. *Waters,* 276 F.3d at 718. If at any step the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Reviewing courts give the Commissioner's decisions great deference. *Id.* at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of

the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n,* 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## II. Background

### A. Factual History

Lewis applied for Disability Insurance Benefits ("DIB") on July 23, 2012 alleging disability beginning July 11, 2012 due to chronic obstructive pulmonary disease, high blood pressure, back problems, hip problems, and asthma.[1] (Tr. 10, 160, 202) Lewis was 34 years old at the time of the onset, with past relevant work as a grocery clerk, satellite installer, and daycare

---

1. Social Security DIB are authorized by Title II of the Social Security Act and provide income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability). In contrast, SSI benefits are authorized by Title XVI of the Social Security Act and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110 (2015). Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S. C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382(c)(3)(A) (SSI). The law and regulations governing the determination of disability are the same for both programs. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994).

worker. (Tr. 15, 18, 160). She asserts he is unable to return to work due to the above listed conditions. (Tr. 202).

B.   **Procedural History**

The agency denied Lewis' application initially and on reconsideration; thereafter she requested an administrative hearing. (Tr. 10). Lewis and her attorney, Becky Skidmore, attended the administrative hearing via video from Nacogdoches, Texas before Administrative Law Judge Roy J. Richardson ("ALJ Richardson") in Dallas, Texas on April 7, 2014. (Tr. 10).

C.   **Administrative Decision**

ALJ Richardson utilized the five-step sequential evaluation process, discussed *supra,* in deciding Lewis' disability claim. (Tr. 10-19). At steps one and two ALJ Richardson found that Lewis mets the insured status requirements through December 31, 2014 and had not engaged in substantial gainful activity since her alleged onset date of July 11, 2012. (Tr. 12). At steps three and four, he found that Lewis had severe impairments including: degenerative disc disease, degenerative joint disease of the right hip, chronic obstructive pulmonary disease, depressive disorder, and generalized anxiety disorder. (Tr. 12).

Next, ALJ Richardson determined that Lewis retained the residual functional capacity ("RFC") to perform less than sedentary work with the following restrictions: she was limited to lifting and carrying up to only 20 pounds frequently and 50 pounds occasionally, sitting up to 7 hours in an 8 hour workday without interruption, standing for a total of 1 hour in an 8 hour workday, up to one hour without interruption, she could walk for a total of 1 hour in an 8 hour workday, up to 1 hour without interruption, she was limited to occasional pushing and pulling at the weights given, climbing, balancing, stooping, kneeling, crouching, and crawling on an occasional basis, work that requires exposures to concentrated smoke, dust, fumes, gases, and

4

temperature extremes cannot be performed, due to mental limitations she has the ability to understand, remember, and carry out detailed, but not complex instructions, she can perform multiple routine tasks, she can sustain attention and concentration, and exercise some independent judgement when confronted with variation in the assigned work, can work in proximity to others, but the accomplishment of her tasks cannot be dependent on a close working relationship with the people around her. Under these circumstances, the ALJ found Lewis could work on a sustained basis, respond appropriately to supervisors, co-workers, and the public in usual situations. (Tr. 14).

In making this determination, ALJ Richardson concluded that Lewis' medically determinable impairments could reasonably cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible as for the reasons in the decision. (Tr. 17).

Based on testimony from the vocational expert, Lewis' age, education, work experience, and the residual functional capacity, ALJ Richardson determined that Lewis could perform other work including a cutter/paster, document preparer and final assembler. (Tr. 18 - 19). Accordingly, the ALJ determined that Lewis was not disabled during the relevant period. (Tr. 19). Lewis requested review of the administrative decision; however, the Appeals Council declined review. (Tr. 1 - 6). Therefore, the ALJ's decision serves as the Commissioner's final decision for purposed of judicial review pursuant to 42 U.S.C. § 405(g).

### III. Legal Analysis

Lewis argues that the ALJ did not properly consider the constant physical and mental pain she suffers on a constant daily basis. Lewis was represented by counsel at the hearing, but is now proceeding *pro se* and accordingly her arguments require special consideration.

**Issue One: whether the ALJ's subjective symptom evaluation findings are supported by substantial evidence?**

The Commissioner and Lewis both focus on Lewis' credibility assessment. Accordingly, the undersigned will evaluate the ALJ's credibility findings and whether they are supported by substantial evidence. Lewis filed this federal action *pro se*, which imposes an additional layer of consideration for the court. As this and other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *See Lockridge v. Colvin*, No. 3:12-CV-4135-BN, 2014 WL 1255745, at *3 (N.D. Tex. Mar. 27, 2014); *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). More often than not, *pro se* litigants in Section 405(g) appeals invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the court may not do. *See Washington*, 413 F. Supp. 2d at 791. Necessarily, the level of scrutiny rests in each reviewing court's sound discretion. *See Elam*, 386 F. Supp. 2d at 753. However, several universal principles factor logically into that equation. Courts must construe *pro se* pleadings and arguments liberally in light of a party's lay status, but must maintain their role as neutral and unbiased arbiters. *See Lockridge*, 2014 WL 1255745 at *3. That is, courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *See id.* (citing *Elam*, 386 F. Supp. 2d at 753).

Recently, in March 2016, Social Security Ruling 16-3p superseded Social Security Ruling 96-7p. SSR 16-3P. (S.S.A. Mar. 16, 2016.) SSR 16-3p eliminated the use of the term "credibility"

in evaluating an individual's subjective symptom evaluation. *Id.* Now, in determining whether an individual is disabled, the ALJ is to consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. *Id.* A symptom is the individual's own description or statement of his or her physical or mental impairment(s). See 20 CFR §§ 404.1528(a) and 416.928(a).

Under the regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. SSR 16-3P. However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations. *See* 20 CFR §§ 404.1529 and 416.929.

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. *Id.* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ will also use the factors set forth in 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3), which includes:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the

> individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p. Although the ALJ is not required to "follow formalistic rules in his articulation" of choices, the administrative decision should be sufficiently specific to make clear that these factors were considered. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir. 1988); *see also Hillman v. Barnhart,* 170 F. App'x 909, 913, 2006 WL 690879, *3 (5th Cir. March 20, 2006) (holding that ALJ was *not* required to "explicitly discuss every factor set forth in the regulations . . . [when] the ALJ elicited the pertinent information from [plaintiff] . . . [and] remand would be fruitless in light of the lack of objective medical evidence in the record to support [plaintiff]'s allegations of disabling back pain.").

The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. SSR 16-3p. Rather, adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. *Id.*

The ALJ found, with regards to Lewis' daily activities, that she alleged that she needed a back brace and a walker, but there was no evidence that she actually used either. (Tr.15 - Tr. 17). According to Lewis, she is able to do her grocery shopping by using the cart to walk, she drives

8

occasionally, and handles her money, but otherwise is confined to her bed. (Tr. 15). The ALJ noted that the physical findings from the consultative physical examination performed in May 2014 by Dr. Sahi suggested that Lewis could sit for 7 hours, stand for an hour, and walk for an hour. (Tr. 17). Lewis also claims difficulty breathing; however, the ALJ found no abnormal pulmonary findings in the medical evidence of record. (Tr. 17). Moreover, Lewis has continued to smoke cigarettes, despite the medical recommendation to stop smoking to assist in her difficulty in breathing. (Tr. 15 - 16).

During Lewis' physical consultative examination with Dr. Jerry Wood, in November 2012, she was able to do a full squat and raise up without assistance. (Tr. 15). She also had normal pulmonary findings, a negative straight leg raise with two plus reflexes, she could perform toe to heel walking, had normal imaging of her hip, lumbar spine, with a possible disc degeneration. (Tr. 15).

A second consultative examination with Dr. Sahi, in May 2014 showed some tenderness in her lower back with a range of motion limit in flexion, extension, and lateral bending. (Tr. 16). However, Dr. Sahi found no evidence of muscle weakness or reduced sensation; she had a normal gait, and negative straight leg test. (Tr. 16). Dr. Sahi's examination also showed that despite Lewis' complaint of left hip tenderness, she had only mild degenerative disc disease, minimal arthritis of the hip joint, the imagining of the lumbar spine was normal, the imagining of the right hip was normal, and she did not need a cane to ambulate. (Tr. 16). Dr. Sahi also found that Lewis could travel without assistance, shop, ambulate without a walker, use public transportation, prepare simple meals, and climb an few steps at a reasonable pace. (Tr. 16). The ALJ found that Dr. Sahi conducted a comprehensive physical examination, including reviewing diagnostic imagining studies in making his opinion, which was generally consistent with the State Agency opinion and

the objective findings, and did not support the significant limitations alleged by Lewis. (Tr. 15-16).

Lewis also reported she took Valium for depression and was sent to a consultative psychological examination in April 2013 with Dr. Clark; who found she had depressive disorder, and anxiety disorder. (Tr. 17). However, her mental status examination showed normal behavior and speech, and goal-directed thought processes. (Tr. 17). She had no other treatment for mental impairments besides the Disability Determination Services ordered consultative examination by Dr. Clark. The ALJ found that while Lewis alleged significant mental health symptoms, there was no evidence she sought evaluation or treatment for the symptoms. (Tr. 17).

On whole, the ALJ took into account Lewis's impairments, the evidence in the record, and determined that her impairments are adequately accommodated by the residual functional capacity. (Tr. 27). Accordingly, substantial evidence supports the ALJ's findings.

For the reasons set forth above, the plaintiff's complaint should be dismissed. A final judgment will be entered in this case in accordance with this memorandum opinion and order.

**So Ordered and Signed**
**Sep 28, 2017**

_____
Ron Clark, United States District Judge